## SARAH WALDEN *vs.* EPHRAIM BROWN.

The day before the expiration of the time for redeeming land from a mortgage, a third person, at the request of the mortgagor, who was a woman in feeble health, called upon the mortgagee, told him that he had oral authority from the mortgagor to pay off the mortgage, and asked him to execute a quitclaim deed to another person who had furnished the redemption money. The mortgagee objecting to sign such a conveyance because there was no written authority, the agent proposed that he should execute a quitclaim deed to the mortgagor and then receive the money due upon the mortgage; but he declined to do so, and said he wished to see the mortgagor, and whatever she wished he would do, and that he would meet the mortgagor two days after, and would take no advantage of the expiration of the time. *Held*, that if the agent had oral authority, direct or indirect, from the mortgagor, or the mortgagor ratified his doings, the tender was sufficient to entitle the mortgagor to redeem.

ACTION OF CONTRACT, praying for relief in equity, to redeem the plaintiff's dwelling-house and land from a mortgage made by her to the defendant to secure the payment of $400.

At the trial before *Shaw*, C. J., it was admitted that the defendant had entered for condition broken, and there was evidence tending to show that the plaintiff, who was in feeble health and had long been an invalid, some days before the expiration of the equity of redemption, being desirous of redeeming the estate, applied, through her niece, Mary E. Sheldon, who lived in the house with her, to Jesse Sheldon, a relative, to lend her the money to redeem the estate, which he agreed to do if he could have a lien on the estate to be redeemed, for his security ; that he advised her to employ a suitable agent to act for her, and recommended Andrew Dodge for that purpose ; that she acceded to this, and requested him to engage Dodge and place the money in his hands for the purpose, which he did, and also engaged John I. Baker to go with Dodge, his only purpose being to place the title to the estate in such form that he should be secure for his advance and the plaintiff regain her estate, subject to such security ; and that he delivered Dodge money to the amount of $510 ; that the time of redemption would expire on Sunday, October 21st, and on the previous Friday Dodge and Baker went to the residence of the defendant at Marblehead, and saw him.

Dodge testified as follows, and his testimony was not controverted : " I told him my business was to settle up the mortgage he held against Mrs. Sally Walden ; he engaged to meet me next day at Salem, and did ; I had with me $510 for that specific purpose. On Saturday, next day, I met him at Salem ; had the same money ; I offered Mr. Brown a quitclaim deed for his signature, running to Jesse Sheldon, and told him I would pay him principal and interest. Mr. Brown requested my authority ; I told him I had not any written authority, that I merely had a verbal request from Mrs. Walden. He then objected to signing such a conveyance, because I had not a written authority. I then proposed to Mr. Brown that if he would give a quitclaim made out to Mrs. Walden, I would pay him

the money. He did not seem willing to comply with that, and said he wanted to see Mrs. Walden, and whatever she wished he would do. That was on Saturday, the 20th of October, and the right of redemption would expire on Sunday, the 21st, and that was expressed at the time. He said it would make no difference, he would take no advantage, he would meet me at Mrs. Walden's in Beverly on Monday between ten and eleven o'clock. I distinctly told him I had the money, and it was so distinctly understood between him and me. On Monday I went to Mrs. Walden's, was there before ten o'clock and there till nearly one o'clock. Mr. Brown did not appear. Mr. John I. Baker was with me at each interview with Mr. Brown, and went with me to Mrs. Walden's on Monday. I was acting, as I considered, by the authority of Mrs. Walden. I had not any direct request from her. I do not know whether I said that I had not seen Mrs. Walden. I had not. I do not remember that Mr. Brown said he would take the money and cancel the mortgage ; he did not say that. I am confident I told him that I had the money to pay the mortgage, and was willing to pay him the amount due on the mortgage. I did inquire of him what was due on the mortgage, and my impression is that he stated it at $490. He brought a memorandum with him, or it was calculated at the time. I did afterwards tell Mrs. Walden that I had offered to pay Mr. Brown the money on his giving a quitclaim deed directly to her, and that he objected to it, because I had no written authority from her; and she made no objection to the course I had taken."

There was other evidence which tended to show that on Sunday, the 21st of October, the defendant went to Mrs. Walden's; that she said she intended to give the estate to her niece, who was a dressmaker, and the defendant proposed to give up the estate to the niece, when she should pay him the amount, and proposed that she should pay him in such sums as she could from time to time out of her earnings; that on Monday, the 22d of October, after Dodge and Baker had gone from Mrs. Walden's, the defendant again called at Mrs. Walden's, and said the time was out, the estate was his, but that should make

no difference; and that she frequently applied to him afterwards and offered to pay him, and urged him to give her some writing, which he always declined, and ultimately told her he had sold the estate, and did not know that he could buy it back.

After the plaintiff's evidence was closed, the counsel for the defendant offered no evidence; but requested the chief justice to instruct the jury that there was no sufficient evidence to prove a tender within the time of redemption, and that therefore this suit for redemption could not be maintained. The chief justice declined so to instruct the jury, but proposed to instruct them as follows:

"If the jury should find upon this evidence that Dodge went to Marblehead two days before the time of redemption expired, to pay the mortgagee his debt and interest and redeem the mortgage, and informed the mortgagee of his business, and by appointment met him again on Saturday; if directly or indirectly, that is, by express request, or through the medium of Sheldon, Mrs. Walden had verbally authorized and requested Dodge to act in her behalf in redeeming the mortgage for her; or if she, after she had been informed by Dodge what he had done in her behalf, approved of it, this was a ratification; and in either event he was her authorized agent; that if he was furnished with the money as from her by Sheldon for the purpose of such redemption, the money was her money; that if he offered Brown the money, and as a condition required a deed to Sheldon, it would not be a valid tender, but an offer on a condition which he was not bound to comply with.

"If however this offer was made solely for the purpose of effecting the redemption and placing the title under the control of Sheldon for his security, which Dodge and Baker were authorized jointly to do, and this was the reason why the first offer was so made with a proposition to execute a deed of quitclaim to Sheldon, it satisfactorily accounted for their tendering such a deed to be signed, and showed that it was not their ultimate intention to make that a condition. If he objected, then this transaction has no effect in controlling the subsequent proceedings on the part of Dodge

" If, when that offer had been declined, Dodge made an offer of the amount stated to be due, upon no other condition than that of making a quitclaim to her, such quitclaim by mortgagee to mortgagor operating in law solely as a release, such a tender, if in other respects sufficient, was a valid tender for the purpose of redemption.

" If the agent, Dodge, in fact had the money with him, in coin or bank bills, to the amount required, and was ready and prepared to pay it in behalf of the mortgagor, and so stated to the mortgagee, and he refused, neglected, declined, and in fact did not consent to receive the money and release his mortgage, it was a valid tender.

" If he had so declined because he was desirous of first seeing the mortgagor, which he could not do, on account of the intervening Sunday, till the equity of redemption had expired, this was in legal effect a refusal to accept the tender and release the mortgage.

" The consent and agreement of 'Dodge to meet Brown on Monday, after the right of redemption should expire, was not a waiver of his tender, not being consented to till after Brown had, in legal effect, refused to receive the money tendered, and release."

The defendant declined to go the jury under these instructions, and consented to a verdict for the plaintiff, subject to the opinion of the whole court upon their correctness.

*W. D. Northend*, for the defendant.

*O. P. Lord*, for the plaintiff.

METCALF, J. The court are of opinion that the instructions, which the chief justice proposed to give to the jury, were correct. The plaintiff therefore is entitled to the benefit of her verdict. She is entitled to redeem the mortgaged estate, on paying such sum as a master shall find to be due to the defendant on the mortgage debt, or such sum as the parties shall agree upon. *Decree for the plaintiff.*